IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONWIDE MUTUAL INSURANCE CO.,   *

    Plaintiff,   *

    v.   *   Civil Action No. RDB 05-2161

ESTATE OF MARTIN KLOTZMAN *et al.*,   *

    Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Nationwide Mutual Insurance Company ("Plaintiff" or "Nationwide") brings this action for declaratory judgment and reformation pursuant to 28 U.S.C. §§ 1332 and 2201, to determine its liability under a policy it issued to Martin Klotzman Realty. Nationwide is an Ohio-based insurance corporation which provides property and casualty insurance and has transacted business in the state of Maryland. As Martin Klotzman is now deceased, Nationwide named as defendants his estate and the personal representatives of that estate, Ina Klotzman Schwob, Frona Klotzman and Randy Klotzman ("the Estate"), Cynthia Graves, individually and as mother and next friend of Christina Graves,[1] and EMKAY, LLC, the successor to Martin Klotzman Realty, a rental property business, ("Defendants" or "the Estate").

Defendants have moved to dismiss the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, or in the alternative, to stay the present action in favor of a parallel state court proceeding currently pending in the Circuit Court of Maryland for Baltimore City in which the Estate of Martin Klotzman has filed a complaint

---

[1] Graves was dropped as a Defendant on October 20, 2005, by paperless order.

against Nationwide and its agent, seeking a declaration of insurance coverage under the same policy at issue in this case.  As the issue has been adequately briefed by counsel, this Court determines that no hearing is necessary on this motion.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

This action for declaratory judgment and reformation arises out of a controversy between the parties over an insurance policy that Nationwide issued to Klotzman Realty in December of 1999, Business Policy No. 52BP360580-3001M ("the Policy").  (*See* Pl.'s Mem. Opp. Defs.' Mot. to Dismiss, Ex. A.)  The Policy included a Lead Exclusion Endorsement ("Lead Exclusion") which barred coverage for bodily injury arising out of or relating to lead exposure.  (*See* Compl. ¶ 10.)  Sometime after issuance of the Policy, Nationwide agreed to add an endorsement (the "Maryland Endorsement") to the Policy, consistent with the Maryland Lead Poisoning Act, that would waive the Lead Exclusion for cases in which the insured is in full compliance with the Maryland Act, with a $17,000 limit to liability.  (*See* Compl. ¶¶ 11-12.)  As the result of a clerical error, Nationwide failed to mail the Maryland Endorsement to Defendants.  (*See* Compl. ¶ 13.)  The parties disagree as to the effect of the Maryland Endorsement on the Lead Exclusion in the Policy.  (*See* Letter to Larry Perone, Defs.' Mem. Supp. Mot to Dismiss, Ex. C.)

In February of 2004, Christina Graves, individually and as next friend of her daughter Wounay Marble, brought suit ("the Underlying Action") against Klotzman in the Circuit Court of Maryland for Baltimore City for alleged injuries relating to lead paint exposure occurring

during Nationwide's policy period.  (*See* Compl., Ex. A.)[2]  Defendants requested that Nationwide provide a defense and indemnification in the Underlying Action, claiming that a manuscript endorsement to the Policy (the "Manuscript Endorsement") deletes the Lead Exclusion and that the Policy, read with the Manuscript Endorsement, obligated Nationwide to defend and indemnify up to the million dollar per occurrence policy limit (two million aggregate in the Underlying Action).  (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. C.)  Defendants further maintained that the Maryland Endorsement had no effect on the Policy.  Nationwide contended that, due to the addition of the Maryland Endorsement, the Policy provides only limited coverage to lead exposure claims of $17,000 and no defense coverage.  (*See* Compl. ¶ 24.)  Unable to resolve this dispute, on May 11, 2005, the Estate filed (but did not serve) an action in the Circuit Court of Maryland for Baltimore City (the pending state court action), asserting claims against Nationwide for declaratory relief and breach of contract, and a claim for negligent misrepresentation against a Nationwide agent in connection with the Policy.  (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. D.)

      Nationwide filed the present action on August 9, 2005, seeking declaratory judgment in connection with its rights and responsibilities under the Policy, along with reformation of the Policy to reflect Nationwide's interpretation of the Maryland Endorsement's effect on the Policy.  Defendants filed the Motion to Dismiss this case on October 26, 2005, after the Underlying Action was dismissed without prejudice on October 19, 2005.  (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. E.).  This action contains the same parties as the pending state court action with the

---

[2] Graves later amended her complaint to name Klotzman's estate as the defendant.  (*See* Compl., Ex. B).

exception of the Nationwide agent, a resident of Maryland, who was not included as a party by Nationwide in this federal court action.

On March 16, 2006, the Circuit Court stayed the pending state court action, pending the outcome of the instant case. (*See* Order, attached to Pl.'s Status Report, Mar. 14, 2006.) The claims in the pending state court action as between the Estate and Nationwide address the costs of Defendants' defense in the Underlying Action and coverage dispute with Nationwide. Defendants incurred less than $50,000 in attorneys' fees in defending the Underlying Action. (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. B ¶ 5.)

## STANDARDS OF REVIEW

I.   Motion to Dismiss

Defendants seek to dismiss Plaintiff's action for lack of subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction are decided under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005). The court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

Plaintiff claims that this Court has jurisdiction over this case as a diversity suit under 28 U.S.C. § 1332. Federal district courts "have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332. Federal courts have discretion to retain jurisdiction over certain diversity claims in which the jurisdictional amount is below $75,000, consistent with the two-part analysis adopted by the United States Court of Appeals for the Fourth Circuit in *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995):

> First, the court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount. Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case. . . . Second, if some event subsequent to the complaint reduces the amount in controversy, . . . the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case.

*Id*. at 112. (internal citations omitted).

In exercising its discretion to determine whether to retain jurisdiction when the amount in controversy falls below $75,000, a district court should consider five factors:

> (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; (5) whether the case presents some significant issue of state law best decided in state court.

*Peiffer v. King Pontiac Buick GMC, Inc*., 105 F. Supp. 2d 470, 472-73 (4th Cir. 2000) (citing *Shanaghan*, 58 F.3d at 112).

II      Declaratory Judgment

Under the Declaratory Judgment Act, federal courts have discretion to hear an action requesting declaratory judgment. 28 U.S.C. § 2201(a) ("In a case of actual controversy within

its jurisdiction, . . . any court of the United States, upon filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). The United States Court of Appeals for the Fourth Circuit has "held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *see also Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942) (discussing a district court's exercise of discretion when there is a state suit involving the same parties and state law issues). In addition, the Fourth Circuit has provided guidance on the exercise of this discretion. Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.,* 139 F.3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

In *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992) the Fourth Circuit stated that district courts should consider considerations of federalism, efficiency, and comity before exercising jurisdiction over a declaratory judgment action. *See id.* at 239. To examine these issues, the Fourth Circuit has articulated the following four factors for consideration:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"; and (iv) whether the declaratory judgment action is being used merely as a device for procedural fencing . . . .

*Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d 821, 824 (4th cir. 2000) (quoting *Centennial Life*

*Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996)) (internal brackets omitted).

In an action seeking declaratory judgment, there is still a requirement imposed by Article III of the Constitution that there be a case or controversy. *See Rental Tools & Equipment Co. Intern., Inc. v. Marsh & McLennan, Inc.*, 1989 WL 234697, *4 (D. Md. Sept. 25, 1989). Although this determination can be difficult for declaratory judgment actions,"[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## DISCUSSION

I.   Subject Matter Jurisdiction under 28 U.S.C. § 1332

Plaintiff claims that it has shown that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, by establishing diversity of citizenship of the parties and meeting the jurisdictional amount in controversy. Defendants argue that Plaintiff has failed to meet the jurisdictional amount of $75,000, and alternatively, that even if the jurisdictional amount has been met, the Court should use its discretion to decline to retain jurisdiction in this case. Although Nationwide met the jurisdictional amount at the time of filing, the current amount in controversy does not satisfy the minimum requirement of $75,000, and for the reasons stated below, this Court, in the exercise of its discretion, declines to retain jurisdiction in this case.

Nationwide satisfies the first part of the *Shanaghan* analysis because the amount in dispute at the time of filing the complaint was greater than $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured

by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977).  First, there is no allegation of bad faith on the part of Nationwide in filing its complaint in this Court.  Second, it was not "plain from the complaint that an amount less than the jurisdictional amount is all that [wa]s at issue . . . ." *Shanaghan*, 58 F.3d at 112.  In fact, Nationwide faced potential liability of two million dollars (the one million dollar policy limit per two occurrences), plus the cost of defense had Defendants been found liable in the Underlying Action.  (Pl.'s Mem. Opp. Defs.' Mot. to Dismiss at p. 5).[3]

Although Plaintiff satisfies the first part of the *Shanaghan* analysis, this Court may exercise its discretion to decline to retain Plaintiff's suit, since the amount in controversy is now below the jurisdictional amount and Plaintiff has substantially equal remedies available at the state level.  Under the second part of the *Shanaghan* test, "if some event subsequent to the complaint reduces the amount in controversy, . . . the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." *Shanaghan*, 58 F.3d at 112.  Following the dismissal of the Underlying Action against Defendants on October 19, 2005, Nationwide became potentially liable only for the cost of the defense of the Underlying Action, Defendants' attorneys' fees, which are less than $50,000.  (Mem. Supp. Defs.' Mot. to Dismiss at p. 5).[4]  Jurisdiction over this case is therefore discretionary and the *Shanaghan* factors weigh

---

[3] Defendants maintain that the amount in controversy was never sufficient to sustain a diversity action because "when Nationwide filed its complaint, counsel for Graves had agreed in principle to dismiss the Underlying Action." (Memo Defs.' Mot. to Dismiss at p. 5.)  Despite this agreement, the Underlying Action remained pending at the time Nationwide filed its complaint, and had Defendants been found liable in the underlying suit, Nationwide faced potential liability well beyond the jurisdictional amount.

[4] Plaintiff does not dispute the amount of attorneys' fees at issue in this case, but claims that its potential liability in future suits under Defendant's policy is at issue and therefore

heavily in favor of dismissal.

First, judicial economy is best served by dismissing this claim to allow the state court in the pending state court action to make a single determination of the rights and responsibilities of Nationwide and the Estate, as both parties request in their respective complaints.  Furthermore, Nationwide's agent is a party to this state action.  Defendants' complaint in the pending state court action seeks declaratory relief regarding "the controversy . . . between the Estate and Nationwide regarding the effect of the Manuscript Endorsement and the existence and/or extent of Nationwide's obligation to defend and indemnify the Estate with respect to the Underlying Action."  (Defs.' Mot. to Dismiss, Ex. D at p. 5.)  Plaintiff seeks identical declaratory relief in Count II of its complaint, in which it requests that this Court declare (i) "the rights, duties and obligations of the parties;" (ii) that Nationwide "has no duty to defend" Defendants in the Underlying Action; and (iii) that Nationwide "has a duty to indemnify only to the extent" required under the Maryland Endorsement and related Maryland Act.  (Compl. ¶ 25.)  In addition, Plaintiff is asking for substantively the same relief in its Count I by asking this Court to interpret the Maryland Endorsement in such a way that reforms the policy.  (Compl. ¶ 25.) Ultimately, the court in the pending state court action must interpret the Policy in light of all endorsements to determine the parties' rights and responsibilities under the Policy.  Judicial

---

satisfies the jurisdictional amount.  Nationwide points to no evidence suggesting that such future suits are likely to arise and its claimed future potential liability is speculative at best.  *See Cannon v. United Ins. Co. of Am.*, 352 F. Supp. 1212 (D. S.C. 1973) (a court cannot speculate on potential outcome to meet jurisdictional amount in a diversity suit); *Your Girl Friday, LLC v. MGF Holdings, Inc.*, 2006 WL 1028959 (D. D.C. 2006) (finding that the defendant's "speculative contention" that the jurisdictional amount would be reached through attorneys' fees was "inadequate to establish the requisite amount in controversy under the diversity statute." *Id*. at *2.).

economy is also best served by dismissing this case because the pending state court action involves a non-removable party[5] and will continue regardless of the outcome of this case.

Second, there is no statute of limitations bar for Nationwide's claims in the state court because under Maryland law, Plaintiff can file its reformation and declaratory judgment claims within thirty days of dismissal regardless of the actual time lapsed.[6]  Defendants have not raised a statute of limitations defense in this action.  Furthermore, because of the pending state court action between Plaintiff and Defendant, Nationwide can presumably raise counter-claims against the Estate to address any issues Nationwide argues will not already be settled under the pending state court action.

Third, the amount of energy that this Court has already expended in this case is slight and does not make it "more efficient to just keep it" in federal court.  The pending state court action will address identical legal issues as those posed in the instant case, and no discovery has been

---

[5] In addition to its claims against Nationwide, the Estate also brought a negligent misrepresentation claim against a Nationwide agent with respect to the Policy.  Like the Estate, the agent is a citizen of Maryland, and therefore cannot be part of this diversity action.  *See* 28 U.S.C. § 1332.

[6] Under Maryland Rule 2-101:

> . . . [I]f an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.

MD Rules, Rule 2-101(b) (2004).

conducted in this case.[7]  Further, because there is a non-removable defendant in the pending state court action, declaratory relief in this case would not settle the entire controversy and is therefore disfavored.  *See Aetna Cas. & Sur. Co.,* 139 F.3d at 422.  As already noted, the state action will continue regardless of the outcome of this case, and the Court's still modest involvement with this case does not militate in favor of the Plaintiff.

Fourth, this case rests entirely on determinations of state law.[8]  The Maryland Endorsement was fashioned after the Maryland Lead Poisoning Act and must be interpreted, along with the Policy and the Manuscript Endorsement, under Maryland contract law.  Further,

---

[7] In contrast to the instant case, this Court in *Peiffer v. King Pontiac Buick GMC, Inc.*, 105 F. Supp. 2d 470 (D. Md. 2000), used its discretion to retain jurisdiction over a case involving an amount in controversy below the jurisdictional amount, in part, because the determination regarding the amount in controversy was not made until after discovery had been completed and there was no parallel pending state action.  *Id.* at 473.  Unlike the situation in *Peiffer*, no discovery has been completed in this case, the pending state court action will address the same legal issues, the pending state court action was filed before the instant case, and it involves a non-removable party.

[8] As a general rule, in a contract case based on diversity of citizenship, such as the case at bar, the Court must determine which state's law to apply.  As this Court has previously noted:

> "In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu*, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made."  *Roy v. Northwestern Nat'l Life Ins. Co.*, 974 F. Supp. 508, 512 (D. Md. 1997), *aff'd* 141 F.3d 1159 (4th Cir. 1998) (citing *Nationwide Mut. Ins. Co. v. Wendler*, 796 F. Supp. 201, 202 (D. Md 1992)); *Aetna Casualty & Surety Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1988) (citing *Traylor v. Grafton,* 332 A.2d 651, 660 (Md. 1975)).  "The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid."  *Aetna*, 552 A.2d at 911 (citing *Sun Ins. Office v. Mallick*, 153 A. 35, 39 (Md. 1931)); *Roy*, 974 F. Supp. at 512 (citing *Sting Sec, Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992)).

*Hyde v. Fidelity & Deposit Co.*, 23 F. Supp. 2d 630, 632 (D. Md. 1998).  In this case, both parties agree that Maryland law is controlling.

11

the Circuit Court of Maryland for Baltimore City, the court hearing the pending state court action, will make its own determination about the rights and responsibilities each party has under the endorsements and the Policy. Respecting comity between the federal and state court systems, the Circuit court is the proper forum for this case.

One *Shanaghan* factor, "whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court," does not weigh in favor of dismissal. *See Shanaghan*, 58 F.3d at 112. There is no evidence that Nationwide "relied on flimsy grounds" to file its action in federal court, and Defendants concede that they did not serve process of the pending state court action upon Nationwide until January 9, 2006 – five months after Plaintiff filed this case. (*See* Defs.' Suppl. Reply Mem. Supp. Defs.' Mot. to Dismiss, Ex. A ¶ 3.) Weighed against the other four factors, however, this factor in itself does not persuade this Court to retain this claim.

II      Declaratory Judgment

Absent the Court's finding concerning jurisdiction in this case, where, as here, Plaintiff's claims are declaratory in nature, this Court may exercise its discretion and decline to address claims for declaratory judgment.[9] The factors to be considered in determining whether

---

[9] Nationwide's reformation claim is declaratory in nature because it is a request for the Court to first declare that the Maryland Endorsement is part of the Policy and then declare the parties' rights under the Maryland Endorsement. Furthermore, reformation originated as a discretionary form of relief is reserved to courts of equity. *See Housing Auth. Of Coll. Park v. Macro Housing, Inc.*, 340 A.2d 216, 219 (Md. 1975). "[I]t has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (quoting *Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 U.S. 100, 120 (1981) (Brennan, J., concurring)).

declaratory judgment is appropriate are similar to those discussed above. *See Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d 821, 824 (4th Cir. 2000). First, as discussed before, this case is determined solely by state law. Second, the issues raised in the federal action will be more efficiently resolved in the Circuit Court of Maryland for Baltimore City. Whereas this Court could resolve legal issues only between Nationwide and Defendants, the state court will resolve the issues raised in this case as well as the negligent misrepresentation claim against the Nationwide agent. *See Centennial Life Insurance Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (finding presence of an insurance agent defendant in a parallel state action, who was not a party to the federal action at issue, to be a "particularly salient" factor in deciding to dismiss the action in favor of the state court proceeding.). Third, "permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'" since both cases require the respective courts to interpret the Policy and endorsements. *Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d at 824. There is no evidence of procedural fencing by either party in this case. Taking each factor into consideration and given the federal courts' "great latitude" in determining whether or not to take jurisdiction over a declaratory judgment action, this Court in the exercise of its discretion, declines to exercise jurisdiction over the declaratory claims raised in this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's complaint is DISMISSED. The Court will issue a separate Order consistent with this Opinion.

13

June 2, 2006                                                  /s/
                                                              Richard D. Bennett
                                                              United States District Judge